IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT BLATT as Trustee of the Ricardo Trust, Individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. |
| BANAMEX USA, | ) ) ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Robert Blatt as Trustee of the Ricardo Trust ("Plaintiff"), on behalf of himself and other similarly situated individuals ("the Class"), brings this Class Action Complaint against Defendant Banamex USA ("Banamex" or the "Bank"), a wholly owned subsidiary of Citigroup and alleges as follows:

## SUMMARY OF CASE

1. Banamex, as part of its banking business, facilitates the transfer of money via wire, primarily between the United States and Mexico. Wire transfers are governed by laws, banking regulations and the agreement between the financial institution and its customer. The financial institution typically charges fees that are predetermined for these transactions, and may also cancel a money transfer for a variety of reasons.

2. A financial institution, however, which cancels a wire transfer for its own convenience is not entitled to lawfully charge a fee for both the initial transfer and the cancellation. That is precisely what the Defendant did with respect to a wire transfer ordered by the Plaintiff. Plaintiff therefore seeks to recover, on behalf of itself and all others, the fees charged to for both the transfers and the cancellations made without cause.

1

## PARTIES

3. **Plaintiff.** Plaintiff Robert Blatt, as Trustee of the Ricardo Trust, is a citizen of the State of Illinois and resides in Cook County, Illinois.

4. **Banamex.** Defendant Banamex is a wholly owned subsidiary of Citigroup. It was an arm of Banco Nacional de Mexico, Mexico's second-largest bank, which is owned by Citigroup. Banamex (then called California Commerce Bank) was acquired by Citigroup in August 2001 as part of Citigroup's purchase of Banco Nacional de Mexico, that country's second-largest bank. Banamex solicits and arranges transfers throughout the United States. Banamex has three offices in the United States, two in Texas and the main office in California.

## I. JURISDICTION AND VENUE

5. **Jurisdiction.** This Court has personal jurisdiction because Banamex did substantial business in this district and division. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d).

6. **Venue.** Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## II. FACTS COMMON TO ALL COUNTS

7. As described above, Banamex is a bank whose business purpose included the transfer money by wire, principally between Mexico and the United States. At its peak, Banamex had more than a billion dollars is assets and more than $700 million in deposits. By July, 2015, it had shrunk to $500 million in assets, $460 million in deposits. In July 2015, it had more than 300 employees.

8. Wire transfers are a service governed by contract and by statute. For example, 12 CFR 210 Subpart B governs fund transfers through Fedwire.

9. Wire transfers are also governed by the contract between the financial institution and its customer. The form Funds Transfer Agreement for Banamex customers is attached as Exhibit A.

10. As set forth in the Funds Transfer Agreement at paragraph 9, the Bank may reject requests for wire transfers for the following reasons:

> "Acceptance or Rejection of Funds Transfer Request. The Bank shall be deemed to have accepted my request for a transfer only upon its execution of such transfer. The Bank reserves the right to reject a Client's funds transfer request. The Bank may reject the request for reasons which include, but are not limited to, if the Client has insufficient available funds in the Client's account for the amount of the funds transfer and any applicable transfer Fees, if the Bank is unable to verify the funds transfer request, if the Bank is unable to open or read the file format in which I send any instructions, if information provided in connection with the funds transfer is incomplete or unclear, if the Bank is unable to confirm the identity or authority of the person requesting the transfer, or if the Bank is unable to fulfill the Client's request for any other reason."

11. In return for these services, the Bank charges the following fees:

"Wire Transfer:
- Incoming..................................................................................................................... 10.00
- Outgoing (Bank Form MIFT Only) ............................................................25.00
- Outgoing (Bank@net - Business Accounts Only)...............................................15.00"

(Banamex schedule of fees, attached as Exhibit B).

12. The corpus of the trust for which the Plaintiff is Trustee is maintained at a brokerage firm with offices in Chicago, Illinois. On or about January 5, 2015, the Plaintiff directed the brokerage firm to wire transfer funds from its Chicago account to a bank in Mexico City for the benefit of the trust's beneficiary. Banamex was employed, did so and charged a $20 fee for its service.

13. On January 6, 2015, the funds were returned by wire without explanation beyond the following: "WIRE FUNDS RETURNED A/O 1/5/2015 UNABLE TO APPLY." An additional $20.00 charge was collected from the Plaintiff for this cancellation.

14. On January 6, 2015, the Plaintiff again requested that the funds be wired to the Mexico City bank. The Bank did so and charged a new $20 fee.

15. On January 7, the money was returned to the Chicago account and again the only explanation was the following: "WIRE FUNDS RETURNED A/O UNABLE TO APPLY." As with the first attempted transfer, the Plaintiff was charged for the wire transfer and for the cancellation.

16. None of the grounds for rejecting a wire transfer set forth in the Funds Transfer Agreement Exhibit A at paragraph 9, above, apply to the Plaintiff's aborted wire transfers herein described.

17. Pursuant to the Funds Transfer Agreement (attached hereto as Exhibit A), the Bank may charge fees as follows:

> "5. **Fees**. Along with Client's agreement to pay fees under to the Other Agreements (including those stated in the Schedule of Accounts), Client agrees to pay the fees specified in this Agreement and third-party fees, such as fees charged by a beneficiary or intermediary bank, for use of the FTAC Services. I/We further authorize the Bank to charge the Account for any applicable service fees for funds transfers in accordance with the Bank's fee schedule in effect at the time of any funds transfer request or in accordance with any disclosures I/We receive at the time of such funds transfer. Collectively all fees referred to in this paragraph are "Fees."

18. This paragraph of the Funds Transfer Agreement does not authorize the Bank to charge fees for failing to make a wire transfer.

19. If a fund transfer is returned, the rights and obligations of the Bank and its customer pursuant to the Funds Transfer Agreement are as follows:

4

"9….If a funds transfer is returned, the Bank may submit the funds transfer back to the Client, adjust the Account, and await further instructions. The Bank may remake such funds transfer, however, if the return is due to the Bank's error and the Bank has sufficient data to remake the funds transfer. I/We agree to retain and provide the Bank with the necessary information to remake such funds transfers. "

20. This paragraph of the Funds Transfer Agreement does not authorize the Bank to impose a fee when a wire transfer is returned.

21. By charging the Plaintiff for a wire transfers that were later returned through no fault of the Plaintiff, the Bank damaged the Plaintiff.

### III. CLASS ACTION ALLEGATIONS

22. **Class Definition.** Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of the following class (the "Class"):

> All persons and entities who directed Banamex to wire transfer money, who were charged a service fee and a termination fee when their wire transferred funds were returned.

23. **Class Certification.** This action may be maintained as a class action pursuant to Rule 23, F.R.C.P., because it satisfies the following criteria:

    a. The Class is so numerous that joinder of all members is impracticable;

    b. There are questions of law and fact common to the Class;

    c. The claims or defenses of the representative parties are typical of the claims or defenses of the Class; and

    d. The Class Representative will fairly and adequately protect the interests of the Class.

24. **Predominance and Superiority.** The Class is properly certifiable pursuant to Rule 23(b)(3), F.R.C.P., because the questions of law and fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Among other things, each Class Member's interest in individually controlling the prosecution of the claims herein makes it

virtually impossible to assert those claims outside the class action context. Moreover, there is no other litigation known by the undersigned counsel that asserts claims based on the facts in this controversy. Finally, there are no likely difficulties in managing this case as a class action and the Plaintiff's counsel is experienced in class actions.

25. **Common Questions.** The common questions of law and fact include, *inter alia,* the following:

    a. The construction of the substantially uniform agreement between Defendant and the Class members;

    b. Whether the fee charged on returned wire transfers was in breach of the contract between the Bank and members of the Class;

    c. Whether the Bank was unjustly enriched by the practice of charging fees for return of the returned wire transfers; and

    d. The method and calculation of damages for members of the Class.

### IV. FIRST CAUSE OF ACTION – BREACH OF CONTRACT

26. Plaintiff repeats and re-alleges each of the preceding paragraphs as if set forth fully herein.

27. Plaintiff entered into a Funds Transfer Agreement with Banamex in order to transfer money from the U. S. to Mexico as set forth in the Funds Transfer Agreement (Exhibit A).

28. Defendant entered into substantially identical contracts with Plaintiff and all Class members that set forth the terms, fees and conditions by which Banamex could charge fees for wire transferring money. These same contracts also govern the grounds for which the Bank can reject or return wire transferred funds. Plaintiff and the Class therefore entered into uniform and unambiguous contracts with Defendant to pay fees for wire transfer only when the transfer was successful or when the transfer was rejected for any of the reasons stated in the Funds Transfer

Agreement. Moreover, as set forth in the Funds Transfer Agreement, the Bank had violated its agreement with Plaintiff and the members of the class by charging a fee first on making the transfer and again when the wire transfers were returned.

29. Defendant breached its contract with Plaintiff and the Class by charging fees first on making the wire transfer and again when the wire transfers were returned.

30. In addition, the contract between the Class and Defendant is one of adhesion that must be construed against the drafter and in favor of Plaintiff and the Class.

31. As a direct and proximate result of Defendant's breach of contract, Plaintiff and the Class members have been damaged in an amount easily calculated from the books and records of the Defendant.

## V.  SECOND CAUSE OF ACTION – UNJUST ENRICHMENT/COMMON LAW RESTITUTION

32. Plaintiff repeats and re-alleges each of the preceding paragraphs, as if set forth fully herein.

33. The Bank has been unjustly enriched by charging for services not performed.

34. By collecting an unlawful fee first for making wire transfers and then again when the wire transfers are returned, Defendant collected fees in excess of those to which it was contractually entitled.  Defendant has therefore unlawfully and unjustly enriched itself to the detriment of the Plaintiff and the Class.  Plaintiff and the Class therefore seek an order of restitution and disgorgement of all excessive fees collected by Defendant.

## VI.  PRAYER FOR RELIEF

35. Plaintiff, on behalf of itself and on behalf of the Class, requests the following relief:

   a. An order certifying the Class and appointing Plaintiff as representative of the Class and the undersigned counsel as Class Counsel;

b. Imposition of a constructive trust upon all excessive funds Defendant has acquired as a result of collecting the unlawful fees;

c. Actual damages suffered by Plaintiff and the Class and full restitution of all excessive fees charged by virtue of Defendant's breach of contract and other unlawful practices;

d. Punitive or exemplary damages, in an amount determined by the Court and/or jury;

e. Any and all statutory enhanced damages;

f. All reasonable and necessary attorneys' fees, expenses and costs provided by statute or common law;

g. Pre- and post-judgment interest; and

h. Such other and further relief, general and special, legal and equitable, to which Plaintiff and the Class may be justly entitled.

Respectfully submitted,

/s/Terrence Buehler_____
Terrence Buehler
LAW OFFICE OF TERRENCE BUEHLER
55 W. Wacker Drive, Ste. 1400
Chicago, IL 60601
(312) 372-2209
tbuehler@tbuehlerlaw.com

Arthur Susman
LAW OFFICES OF ARTHUR SUSMAN
55 West Wacker Drive, Ste. 1400
Chicago, Il 60601
(847) 800-2351
arthur@susman-law.com

*ATTORNEYS FOR PLAINTIFF*
*ROBERT BLATT, as Trustee for the Ricardo Trust,*
*and on behalf of all others similarly situated*